MARCILLE MOORE,                      )
                                      )
      Plaintiff,                )
                                      )
      v.                        )      CAUSE NO.: 3:12-CV-166-TLS
                                      )
MIDLAND CREDIT MANAGEMENT,           )
INC.,                                 )
                                      )
      Defendant.                )

## OPINION AND ORDER

This matter is before the Court on the Plaintiff's Motion for Attorneys' Fees and Costs

Pursuant to Her Acceptance of Defendant's Offer of Judgment [ECF No. 21] filed on August 20,

2012. The Plaintiff ask the Court to award her $5,712.00 in attorneys' fees. The Defendant filed

its Response to Plaintiff's Motion for Attorneys' Fees and Costs [ECF No. 23] on September 4,

2012.[1] On October 8, 2012, the Plaintiff filed her Reply in Support of Her Motion for Attorneys'

Fees and Costs [ECF No. 25]. The Plaintiff's Motion is now ripe for ruling.

## BACKGROUND

On April 9, 2012, the Plaintiff filed her Complaint [ECF No. 1] bringing suit against

Defendant, Midland Credit Management, Inc., under the Fair Debt Collection Practices Act

(FDCPA), 15 U.S.C. § 1692, *et seq*. The Plaintiff's Complaint alleged that the Defendant

communicated with the Plaintiff in an attempt to collect a debt after receiving a cease and desist

order and notice of representation letter. (Compl. ¶¶ 10–13, ECF No. 1.) On July 25, 2012, the

---

[1] The Defendant subsequently filed an identical copy of its Response to Plaintiff's Motion for
Attorneys' Fees and Costs [ECF No. 24] on September 10, 2012.

Defendant served the Plaintiff's counsel with a Rule 68 Offer of Judgment [ECF No. 16-1] of $1,000.00, plus court costs and reasonable attorneys' fees. Thereafter, the Plaintiff accepted the Defendant's Offer of Judgment and filed a Notice of Acceptance of Defendant's Offer of Judgment Pursuant to Federal Rule of Civil Procedure 68 [ECF No. 16] on July 27, 2012. The parties were unable to reach an agreement concerning attorneys' fees,[2] which led to the filing of the instant Motion.

## DISCUSSION

Plaintiffs who prevail under the FDCPA are entitled to an award of costs and reasonable attorneys' fees. 15 U.S.C. § 1692k(a)(3); *Schlacher, et al. v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009). Such an award is mandatory. *Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997). The general rule for calculating attorneys' fee awards under fee shifting statutes is applicable to attorneys' fees awards under the FDCPA. *Gastineau v. Wright*, 592 F.3d 747, 748–49 (7th Cir. 2010). The starting point for calculating awards of attorneys' fees is the lodestar method, which is the product of a reasonable hourly rate and the number of hours reasonably expended on the litigation. *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). The Court may exercise its discretion to "adjust [the lodestar] figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau*, 592 F.3d at 748. "The standard is whether the fees are reasonable in

---

[2]The Plaintiff filed a Bill of Costs [ECF No. 20] for $385.00. The Defendant does not dispute the amount of costs. The sole issue before the Court is whether the Plaintiff's attorneys' fees are reasonable.

relation to the difficulty, stakes, and outcome of the case." *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999) (quoting *Bankston v. Illinois*, 60 F.3d 1249, 1256 (7th Cir. 1995)). In determining a reasonable amount of attorneys' fees, "the district court must demonstrate that it has considered the proportionality of attorneys' fees to the total damage award." *Moriarty v. Svec II*, 233 F.3d 955, 963 (7th Cir. 2001). The Seventh Circuit has mandated that district court orders should "evidence increased reflection before awarding attorney's fees that are large multiples of the damages recovered or multiples of the damages claimed." *Id.* at 968. Ultimately, the party seeking an award of attorneys' fees bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999).

### A.      Reasonableness of Hourly Rates

Generally, a reasonable hourly rate for an attorney is based on what the attorney charges and receives in the market from paying clients for the same type of work. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). A plaintiff bears the burden of producing satisfactory evidence that the hourly rate is reasonable and in line with those prevailing in the community. *Id.* If a plaintiff satisfies this burden, the opposing party must offer evidence setting forth "a good reason why a lower rate is essential." *Id.* (internal quotation and citation omitted).

The Plaintiff has provided the Court with a Statement of Services [ECF No. 21-1], Attorney Biographies [ECF No. 21-2], Declarations [ECF No. 21-3], a Consumer Law Fee Survey Report [ECF No. 21-4], a National Law Journal Billing Survey [ECF No. 21-5], and a Bill of Costs [ECF No. 21-6]. These exhibits detail the time and work performed and the hourly

rates charged, and the Court has carefully reviewed these submissions. The Plaintiff is represented by the law firm of Krohn & Moss (K&M). Five lawyers—Mike Agruss, Ryan Lee, Mahadhi Corzano, Douglas Baek, and Jessica Pascale—and two paralegals at K&M actively participated in the representation of the Plaintiff in the instant lawsuit. All five attorneys billed at a rate of $285/hour. (*See* Pl.'s Statement of Services, ECF No 21-1.) The paralegals billed at a rate of $140/hour. (*Id.*)

The Defendant contends that the rates billed by the Plaintiff's attorneys and paralegals are not reasonable. In support of this argument, the Defendant points to other cases[3] in which district courts reduced the hourly rates of K&M attorneys. (Def.'s Resp. to Pl.'s Mot. for Att'y Fees 3, ECF No. 23.) Emphasizing the varying degrees of experience of the five attorneys that participated in the representation of the Plaintiff, the Defendant questions how their identical billing rates could be considered reasonable. (*Id.* 3–4.) In her Reply, the Plaintiff asserts that she has presented sufficient evidence to establish the reasonableness of the attorneys' and paralegals' hourly rates. (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. For Att'y Fees 2–5, ECF No. 25.) Specifically, the Plaintiff points to the biography statements for her attorneys and the attorney fee surveys as supporting evidence. Although the Defendant contends these fee surveys and the Laffey Matrix are too broad to support a finding of reasonable hourly rates, the Plaintiff argues that the Defendant has failed to present an affidavit demonstrating that the rates of the Plaintiff's

---

[3]The Defendant cites *Bilazzo v. Portfolio Recovery Associates, LLC*, Civil No. 11–4517, 2012 WL 2464223, at *6 (D.N.J. June 25, 2012); *Schommer v. Accelerated Receivable Solutions*, No. 8:11-cv-95, 2011 WL 3422775, at *2 (D. Neb. Aug. 4, 2011); *Rafanan v. Focus Receivables Management, LLC*, No. 09–cv–02715–JAM–KJM, 2010 WL 2923284, at *2 (E.D. Cal. July 26, 2010).

attorneys are unreasonable. (*Id.* 3.) The Plaintiff further emphasizes that many courts[4] have

relied on the Laffey Matrix and fee surveys to determine the reasonableness of attorneys' hourly

rates. (*Id.*) If the Court finds a reduction to the hourly rates is appropriate, the Plaintiff maintains

that the amount should be reduced to $250 per hour, "which is consistent with rates awarded by

other district courts[5] in Indiana for FDCPA lawsuits." (*Id.*)

1.      Ryan Lee

First, the Defendant challenges Ryan Lee's hourly rate of $285.00. According to the

Defendant, Lee's biography does not include a law school graduation or bar admission date, "so

it is impossible to tell how much experience he has." (Def.'s Resp. 2–3.) Acknowledging Lee's

six years of experience prosecuting FDCPA lawsuits, the Defendant argues that no evidence has

been provided to justify or explain his rate. (*Id.* 3.) In her Reply, the Plaintiff reiterates that it is

the Defendant's burden to establish that a rate reduction is justified and argues that the

Defendant has not met its burden in this case. (Pl.'s Reply 2–3.)

---

[4]The Plaintiff cites *Anderson v. Specified Credit Ass'n, Inc.*, Civil No. 11–53–GPM, 2011 WL 2414867 (S.D. Ill. June 10, 2011); *Savage v. NIC, Inc.*, No. 2:08–cv–01780–PHX–JAT, 2010 WL 2347028 (D. Ariz. June 9, 2010); *Dobina v. Carruthers*, No. 5:09-cv-2426, 2010 WL 1796345 (N.D. Ohio May 3, 2010); *Stone v. National Enterprise Sys*, No. 6:08–cv–1523–Orl–22GJK, 2009 WL 3336073 (M.D. Fla. Oct. 15, 2009).

[5] The Plaintiff cites *M.T. ex rel. Todd v. Accounts Recovery Bureau, Inc.*, No. 1:11–cv–969–WTL–DKL, 2012 WL 3764039 (S.D. Ind. Aug. 8, 2012) report and recommendation adopted, 2012 WL 3764036 (S.D. Ind. Aug. 28, 2012); *A.M. ex rel. Mundy v. Accounts Recovery Bureau, Inc.*, No. 1:11–cv–929–WTL–DKL, 2012 WL 3764034 (S.D. Ind. Aug. 8, 2012) report and recommendation adopted, 2012 WL 3764028 (S.D. Ind. Aug. 28, 2012); *Young v. Accounts Recovery Bureau, Inc.*, No. 1:11–cv–255–WTL–DKL, 2012 WL 3764014 (S.D. Ind. Aug. 8, 2012) report and recommendation adopted as modified, 2012 WL 3776498 (S.D. Ind. Aug. 28, 2012); *Luttrell v. Accounts Recovery Bureau, Inc.*, No. 1:11–cv–0877–JMS–DML, 2012 WL 566396 (S.D. Ind. Jan. 23, 2012) report and recommendation adopted, 2012 WL 566628 (S.D. Ind. Feb. 17, 2012); *Martin v. Financial Recovery Ctr., Inc.*, No. 2:10–cv–109–PPS–PRC, 2010 WL 4318830 (N.D. Ind. Oct. 20, 2010).

Lee's biography indicates that he joined K&M in January 2006, and focuses his practice on lemon law and consumer protection. (Att'y Biographies 1, ECF No. 21-2.) Specifically, Lee concentrates his practice in breach of warranty and FDCPA cases. (*Id.*) "He has handled every aspect of litigation including arbitration, mediation, motion practice and trial." (*Id.*) During his time at K&M, Lee asserts that he "[has] been involved in well over 1,000 consumer law matters involving lemon law, breach of warranty, consumer fraud and debt collector harassment." (Lee Decl. ¶ 4, ECF No. 21-3.)

The statement of services shows that Lee, like his co-attorneys, bills at $285 per hour. (Statement of Services, ECF No. 21-1.) The United States Consumer Law Attorney Fee Survey Report from 2010-2011 "includes the Average Hourly Rates by Years in Practice Tables by Region because years in practice is a primary factor in the determination of a reasonable hourly rate. These tables report, on a regional basis, the average hourly rates according to only the number of years an attorney has been practicing law." (Consumer Law Fee Survey 2, ECF No. 21-4.) For purposes of the Report, Indiana is considered to be part of the Midwest region. According to the Report, the average hourly rate in the Midwest region for an attorney with three to five years of experience in consumer law is $263. (*Id.* 21.) The average hourly rate in the Midwest region for an attorney with six to ten years of experience in consumer law is $318. (*Id.*) With six years of experience in consumer law at K&M, Lee's hourly billing rate of $285 falls within the range of average hourly rates found in the Report.

Further, the Plaintiff cites the 2004 National Law Journal Billing Survey for the propositions that K&M's rates "are commensurate, if not lower, then [sic] average rates charged by other firms in Chicago." (Pl.'s Mot. for Att'y Fees 7, ECF No. 21.) An average of billing

rates for Chicago firms included in the Survey results in an average associate billing rate of $261 per hour. (*Id.*) Finally, the Plaintiff identifies the Laffey Matrix as another source of support for Lee's billing rate of $285 per hour. (*Id.* 7–9.) For attorneys with four to seven years of experience, the Laffey Matrix provides for an hourly rate of $285. (*Id.* 9.) With six years of experience, Lee's rate of $285 per hour is reasonable under the Laffey Matrix.

The Defendant emphasizes that other district courts[6] have found that the Consumer Law Attorney Fee Survey Report and the Laffey Matrix "are too broad and general to provide justification for the purported rates." (Def.'s Resp. 5.) In *Bilazzo, Fried*, *Cassagne*, and *Schommer*, the district courts emphasized that the Consumer Law Survey Report did not specifically address attorney billing rates for work on FDCPA cases. *Bilazzo, Fried*, and *Cassagne*, all from the District of New Jersey, emphasized that the Report had not been adopted within the Third Circuit. Further, the courts in those cases noted the limited relevance of the Laffey Matrix because the Matrix provides billing rates pertinent to the Washington D.C. area only. In her Reply, the Plaintiff notes that numerous courts[7] have found reliance on the Report and Laffey Matrix to be appropriate in establishing a reasonable billing rate in FDCPA cases. (Pl.'s Reply 3.) Although the cases cited by the Plaintiff contain limited analysis, their upshot is that the Report and Laffey Matrix are appropriately viewed as one factor to be considered in combination with other evidence—personal affidavits, attorney biographies, past fee awards—in determining the reasonableness of an attorney's hourly rates.

---

[6]*Bilazzo,* 2012 WL 2464223, at *6; *Freid v. Nat'l Action Fin. Servs., Inc.*, Civil Action No. 10–2870 (ES)(CLW), 2011 WL 6934845 at *6–7 (D.N.J. Dec. 29, 2011); *Cassagne v. Law Offices of Weltman, Weinberg and Reis Co.*, Civil Action No. 11–2791 (FLW), 2011 WL 5878379 at *5 (D.N.J. Nov. 23, 2011); *Schommer,* 2011 WL 3422775.

[7]*See supra* note 4.

The cases cited by the parties offer competing arguments as to the value of the Report and Laffey Matrix in determining the reasonableness of hourly rates. However, neither party has identified case law that is binding on this Court. The Court has reviewed the parties' arguments and the relevant Seventh Circuit case law. Based on this review, the Court finds that consideration of the Consumer Law Fee Survey Report and the Laffey Matrix is appropriate. Numerous district courts in the Seventh Circuit have considered the Consumer Law Attorney Fee Survey Report in analyzing the reasonableness of proposed hourly billing rates. *See, e.g.*, *Anderson v. Specified Credit Ass'n, Inc.*, Civil No. 11–53–GPM, 2011 WL 2414867, at *4 (S.D. Ill. June 10, 2011) (considering the 2010–2011 Consumer Law Attorney Fee Survey in determining the reasonableness of hourly billing rates); *Moreland v. Dorsey Thornton and Assocs. L.L.C.*, No. 10–cv–867, 2011 WL 1980282, at *3 (E.D. Wis. May 20, 2011) (considering the 2008-2009 Consumer Law Attorney Fee Survey in determining the reasonableness of hourly billing rates); *Suleski v. Bryant Lafayette & Assocs.*, No. 09–C–960, 2010 WL 1904968, at *3 (E.D. Wis. May 10, 2010) ("the United States Consumer Law Attorney Fee Survey for 2008–09 for the Midwest and California . . . supports the reasonableness of the hourly rates sought by counsel in light of their experience as described in their attorney profiles on the Krohn & Moss website."); *Vahidy v. Transworld Sys., Inc.*, No. 09 C 50067, 2009 WL 2916825, at *5–6 (N.D. Ill. Sept. 1, 2009) (considering the 2007 Consumer Law Attorney Fee Survey and Laffey Matrix in determining the reasonableness of a K&M attorney's hourly billing rate); *Decker v. Transworld Sys., Inc.*, No. 09 C 50073, 2009 WL 2916819, at *5–6 (N.D. Ill. Sept. 1, 2009) (same). When corroborated by additional evidence, the Report provides a general range for billing rates that is useful as one factor in a court's multi-factor analysis.

Next, the Court considers the relevance of the Laffey Matrix to its determination of the reasonableness of the Plaintiff's proposed billing rates. The Seventh Circuit has not formally adopted the Laffey Matrix, but has recognized that district courts in this Circuit have considered the Matrix when determining the reasonableness of attorney fee awards. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 649–50 (7th Cir. 2011). The *Pickett* court noted that "[t]he district courts that have considered the Laffey Matrix have viewed it with differing levels of praise and skepticism." *Id.* at 650. The Court takes note of the Seventh Circuit's direction to use caution in applying the Matrix to a determination of a reasonable hourly billing rate for fee awards. "This exercise of caution does not, however, bar the consideration of the Laffey Matrix as a factor in rate determinations," *Ragland v. Ortiz*, No. 08 C 6157, 2012 WL 4060310, at *2 (N.D. Ill. Sept. 14, 2012), and this Court will consider it as one factor among many in its analysis. This is consistent with the practice of district courts throughout the Seventh Circuit. *See, e.g., Chorak v. Astrue*, Civil No. 2:11-cv-114, 2012 WL 1577448, at *3 (N.D. Ind. May 4, 2012) (considering the Laffey Matrix in determining the reasonableness of hourly billing rate); *Sandra T.-E. v. Sperlik*, No. 05 C 473, 2012 WL 1107845, at *1 (N.D. Ill. Apr. 1, 2012) (collecting cases from the Northern District of Illinois in which courts considered the Laffey Matrix as one factor in determining a reasonable rate); *Realty Execs. Int'l, Inc. v. Midtown Realty LLC*, No. 07C250, 2008 WL 1969898, at *2 n.2 (E.D. Wis. May 2, 2008) (considering the Laffey Matrix in determining the reasonableness of hourly billing rates).

Here, the Court finds that Lee's billing rate of $285 per hour is reasonable. The Court bases its finding of reasonableness on Lee's Affidavit and biography attesting to his six years of experience at K&M practicing consumer law with a particular emphasis on FDCPA lawsuits.

The Consumer Law Fee Survey Report and the Laffey Matrix further corroborate the reasonableness of Lee's billing rate. With six years of experience in consumer law at K&M, Lee's hourly billing rate of $285 is below the $318 average hourly rate in the Midwest region for an attorney with six to ten years of experience in consumer law found as set forth in the Report. The Laffey Matrix also supports the reasonableness of Lee's billing rate. Finally, the Court's own knowledge of local billing practices confirms its conclusion that Lee's billing rate of $285 per hour is reasonable.

2.      Mike Agruss

Next, the Defendant challenges Mike Agruss' hourly rate of $285.00. According to the Defendant, Agruss has less than four years of prosecuting FDCPA lawsuits. (Def.'s Resp. 4.) Reiterating its earlier argument that the Report and Laffey Matrix are too broad to support a finding of reasonableness, the Defendant cites *Schommer*, in which the district court reduced Agruss' rate to $215 per hour. (*Id.* 5.) Agruss' biography indicates that he graduated from law school in January 2004 and began his career in civil litigation in May 2004, with a focus on personal injury litigation. (Att'y Biographies 1–2.) In August 2008, Agruss moved to Los Angeles to begin working for K&M. (*Id.* 2.) Over the past four years, Agruss has focused his practice on FDCPA cases. (*Id.*) "[Agruss] has tried eight jury trials to verdict, and successfully arbitrated, mediated, and pretried dozens of cases." (*Id.*)

The statement of services shows that Agruss, like his co-attorneys, bills at $285 per hour. (Statement of Services, ECF No. 21-1.) According to the United States Consumer Law Attorney Fee Survey Report from 2010–2011, the average hourly rate in the Midwest region for an

attorney with three to five years of experience in consumer law is $263. (Consumer Law Fee Survey Report 21.) The average hourly rate in the Midwest region for an attorney with six to ten years of experience in consumer law is $318. (*Id.*) With eight years of experience in civil litigation and four years of experience in consumer law at K&M, Agruss' hourly billing rate of $285 falls within the range of average hourly rates found in the Report. The Plaintiff also identifies the Laffey Matrix as another source of support for Agruss' billing rate of $285 per hour. (Pl.'s Mot. for Att'y Fees 7–9.) For attorneys with four to seven years of experience, the Laffey Matrix provides for an hourly rate of $285. (*Id.* 9.) For attorneys eight to ten years of experience, the Laffey Matrix provides for an hourly rate of $350. (*Id.*) With eight years of experience civil litigation experience, Agruss' rate of $285 per hour is reasonable under the Laffey Matrix.

To the extent that the Defendant argues that the Court should not consider the Report and Laffey Matrix, as with Lee, the Court finds that the Report and Laffey Matrix are appropriate factors to be considered in determining the reasonableness of proposed rates. Equally unpersuasive is the Defendant's citation to *Schommer* as a basis for reducing Agruss' billing rate. In *Schommer*, the Defendant submitted an affidavit from a local attorney "with significant experience litigating FDCPA cases" in which the attorney stated that a reasonable rate in Nebraska for an attorney with similar experience as Agruss would be $215 per hour. 2011 WL 3422775, at *3. The Defendant here has not presented any similar evidence and therefore has not met its burden necessary to support a rate reduction. For the same reasons as with Lee, the Court finds that Agruss' $285 per hour rate is reasonable.

3.      *Mahadhi Corzano and Douglas Baek*

In challenging Mahadhi Corzano's and Douglas Baek's billing rate, the Defendant notes that Corzano and Baek have four years of experience practicing law but only two years of prosecuting FDCPA lawsuits. (Def.'s Resp. 4.) The Defendant cites to two district court cases in which courts found reasonable billing rates for Corzano and Baek to be below $200 per hour. First, the Defendant cites to *Schommer* in which a district court in Nebraska reduced Corzano's billing rate to $170 per hour for his work in a FDCPA lawsuit. (*Id.* 5.) Second, the Defendant cites to *Rafanan*, in which a district court in California found Baek's billing rate of $185 per hour was reasonable for Baek's work in a FDCPA lawsuit. (*Id.* 5.)

It is not clear from Corzano's biography how much experience he has in the practice of law. Corzano has been a member of the California State Bar since 2008. (Att'y Biographies 3.) Corzano joined K&M in 2010 and focuses his practice on consumer protection and FDCPA issues. (*Id.*) Prior to joining K&M, Corzano "litigated in a wide variety of legal areas, including insurance coverage and bad faith, catastrophic personal injury, employment law, and real estate transaction. [Corzano] participated in numerous litigation cases that have successfully resolved in mediation and arbitration in awards over six figures." (*Id.*) The Court credits Corzano with at least four years of civil litigation experience and two years of FDCPA litigation experience. The Court also notes that because Corzano's public LinkedIn profile[8] indicates that Corzano graduated from law school in 2005 and began work for a "Consumers' Law Group" as a law clerk in 2006, he may have two additional years experience in civil litigation and consumer law.

_____

[8] *See* Mahadhi Corzano LinkedIn Profile, http://www.linkedin.com/pub/mahadhi-corzano/16/27a/354 (last visited October 23, 2012).

Baek's biography indicates that he graduated from Southwestern Law School in Los Angeles, California in 2008. (Att'y Biographies 4.) In 2010, Baek joined K&M where he focuses his practice in FDCPA cases and issues related to consumer protection. (*Id.*) Baek has previous experience working in the Los Angeles County District Attorney's Office and as a personal injury attorney. (*Id.*) The statement of services shows that Corzano and Baek, like their co-attorneys, bill at $285 per hour. (Statement of Services, ECF No. 21-1.) According to the United States Consumer Law Attorney Fee Survey Report from 2010–2011, the average hourly rate in the Midwest region for an attorney with three to five years of experience in consumer law is $263. (Consumer Law Fee Survey Report 21.) With four years of experience in civil litigation and two years of experience in consumer law at K&M, Corzano's and Baek's hourly billing rate of $285 is slightly above the average hourly rates found in the Report. The Plaintiff also identifies the Laffey Matrix as another source of support for Corzano's and Baek's billing rate of $285 per hour. (Pl.'s Mot. for Att'y Fees 7–9.) For attorneys with four to seven years of experience, the Laffey Matrix provides for an hourly rate of $285. (*Id.* 9.) With four years of experience civil litigation experience, Corzano's and Baek's rate of $285 per hour is reasonable under the Laffey Matrix.

The Defendant has failed to present evidence as to why a reduction in Corzano's billing rate is essential in this case. The Defendant's citation to the *Schommer* case is inapt here because the Defendant in *Schommer* presented the Court with a sworn affidavit from a local attorney with extensive experience in the litigation of FDCPA in Nebraska. No such evidence has been presented to the Court here with respect to Corzano. Rather, the evidence presented to the Court includes a statement of services detailing Corzano's billing rate, an attorney biography detailing

13

Corzano's legal experience and skill, a Consumer Law Fee Survey Report, and the Laffey Matrix, all of which provide varying degrees of support for a billing rate of $285. Consequently, combined with the Court's own knowledge of local billing rates, the Court finds that Corzano's billing rate of $285 per hour is reasonable.

Similarly, with respect to Baek, the Defendant's citation to *Rafanan* is unavailing. In *Rafanan*, the district court found that $185 per hour was a reasonable rate for the Eastern District of California. 2010 WL 2923284, at *2. The Court offers several observations. First, *Rafanan* is from the Eastern District of California and the Defendant offers no explanation for how billing rates in the Eastern District of California are similar to those in the Northern District of Indiana. Second, the District Court in *Rafanan* did not provide any explicit reasoning for its decision that $185 per hour was a reasonable rate for Baek. Third, and most significantly, *Rafanan* is from more than two years ago at which time Baek had only begun his practice at K&M with a focus on FDCPA lawsuits. Consequently, in the intervening years, as Baek has gained experience and expertise, it is not surprising that his billing rate would have risen accordingly. As with Corzano, the Court is in receipt of a statement of services detailing Baek's billing rate, his attorney biography detailing his legal experience, a personal affidavit regarding his representation in this case, a Consumer Law Fee Survey Report, and the Laffey Matrix. Combined with the Court's own knowledge of local billing rates, the Court finds that this evidence is sufficient to support a finding that Baek's rate of $285 per hour is reasonable.

4.      Jessica Pascale

Finally, the Defendant challenges Jessica Pascale's billing rate of $285 per hour. The

Defendant offers two arguments in supports of its request that the Court reduce Pascale's billing rate. First, the Defendant argues that Pascale's billing rate is not reasonable because of her limited experience in prosecuting FDCPA lawsuits; specifically, the Defendant compares Pascale's one year of experience in prosecuting FDCPA lawsuits with that of her more senior colleagues, questioning how Pascale can reasonably bill at the same rate as attorneys with significantly more experience. (Def.'s Resp. 4.) Second, the Defendant contends that Pascale's billing rate is unreasonable because she is not admitted to practice in the Northern District of Indiana and therefore "should not be awarded attorney's fees." (*Id.*)

Pascale's biography indicates that she graduated from Southwestern Law School in Los Angeles, California in 2008, and has been licensed to practice in California since February 2009. (Att'y Biographies 4.) Pascale has experience in a number of areas of the law, including contracts, bankruptcy, intellectual property, worker's compensation, employment, business, and real estate. In December 2011, Pascale joined K&M where she focuses her practice on FDCPA cases. (*Id.*) The statement of services shows that Pascale, like her co-attorneys, bills at $285 per hour. (Statement of Services, ECF No. 21-1.) According to the United States Consumer Law Attorney Fee Survey Report from 2010–2011, the average hourly rate in the Midwest region for an attorney with three to five years of experience in consumer law is $263. (Consumer Law Fee Survey Report 21.) With three years of experience as a practicing attorney and less than a year of experience in consumer law at K&M, Pascale's hourly billing rate of $285 is slightly above the average hourly rates found in the Report. The Plaintiff also identifies the Laffey Matrix as another source of support for Pascale's billing rate of $285 per hour. (Pl.'s Mot. for Att'y Fees 7–9.) For attorneys with four to seven years of experience, the Laffey Matrix provides for an

hourly rate of $285. (*Id.* 9.) For attorneys with one to three years of experience, the Laffey

Matrix provides for an hourly rate of $240. (*Id.*) With three years of experience civil litigation

experience, Pascale's rate of $285 per hour is above the average rate under the Laffey Matrix.

The Plaintiff has submitted a statement of services showing Pascale billed at $285 per

hour, a biography detailing Pascale's legal experience, a personal affidavit regarding her

representation in this case, a Consumer Law Fee Survey Report, and the Laffey Matrix.

Combined with the Court's own knowledge of local billing rates, the Court finds that this

evidence is sufficient to support a finding that Pascale's rate of $285 per hour is reasonable. The

Defendant has not offered evidence showing why a lower rate is essential.

The parties present competing arguments regarding whether Pascale, as an attorney not

licensed to practice in the Northern District of Indiana, should be able to receive fees for her

work on this case. The Defendant cites *Bilazzo*, 2012 WL 2464233, at *6, and *Rafanan*, 2010

WL 2923284, at *2, for the proposition that "where an attorney is not admitted to practice, she

should not be awarded attorney's fees." (Def.'s Resp. 4–5.) In her Response, the Plaintiff

contends that "other courts have found that assistance of non-admitted attorneys is legitimate and

should not reduce any fee award." (Pl.'s Reply 4.) In support, the Plaintiff quotes the following

passage from *Missouri v. Jenkins*, 491 U.S. 274 (1989):

> Clearly, a "reasonable attorney's fee" cannot have been meant to compensate only
> work performed personally by members of the bar . . . the fee must take into account
> the work not only of attorneys, but also of secretaries, messengers, librarians,
> janitors, and others whose labor contributes to the work product for which an
> attorney bills her client.

*Id.* at 285. Further, the Plaintiff cites to *Winterrowd v. American General Annuity Ins. Co.*, 556 F.3d

815 (9th Cir. 2009), in which the Court stated:

> This court has permitted fee recovery for the work of paralegals, database managers, legal support, summer associates, and even attorneys who have yet to pass the bar. *Nat'l Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152 (9th Cir. 2008). These participants in the legal process do not "appear" before the district court, as they do not argue cases or sign briefs. They are nevertheless an integral part of the litigation process.

*Id.* at 823. The Plaintiff continues, noting that the Court in *Winterrowd* agreed with the reasoning in *Dietrich Corp. v. King Resources, Co.*, 596 F.2d 422 (10th Cir. 1979), in which the Tenth Circuit awarded attorneys' fees to an attorney who was not licensed to practice in Colorado who had worked as a consultant in a large securities litigation case. The Tenth Circuit found that the out-of-state attorney should be "treated as a lawyer whose services in the instant case did not constitute the unauthorized practice of law," and that he could recover fees. *Id.* at 426. Further, the *Dietrich* Court emphasized that its holding should be limited to instances where the unlicensed attorney's work is filtered through a licensed in-state attorney, who is admitted to the local court and subject to its discipline. *Id.*

The Plaintiff's positions is supported by decisions from other circuits as well. In *Priestley v. Astrue*, 651 F.3d 410 (4th Cir. 2011), the plaintiffs prevailed on an appeal from the Social Security Administration's denial of their claims for disability benefits. As the prevailing party, the plaintiffs filed for "fees and other expenses" pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2421(d). Specifically, the plaintiff sought reimbursement for the attorneys fees of the lead lawyer from South Carolina and two out-of-state attorneys who assisted the lead lawyer in drafting the brief and other pleadings that were submitted to the United States District Court for the District of South Carolina. The District Court granted the fee award for the lead lawyer licensed to appear before the Court, but denied the fees charged by the out-of-state attorneys because they were not licensed to practice before the Court and had not been admitted

*pro hac vice*. In reversing the District Court's denial of fees for the out-of-state attorneys, the Fourth Circuit cited the Tenth Circuit's decision in *Dietrich* with approval. *Priestley*, 651 F.3d at 417–18. The *Priestley* Court found that an award of attorneys' fees for the support work performed by the out-of-state attorneys was consistent with past decisions in which they had authorized reimbursement of attorneys' fees including "authorization for reimbursement for work performed not only by attorneys but also by persons doing 'tasks traditionally performed by an attorney and for which the attorney would customarily charge the client,' regardless of whether a licensed attorney, paralegal, or law clerk performed them." *Id.* at 416 (citing *Hyatt v. Barnhart*, 315 F.3d 239, 255 (4th Cir. 2002); *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 581 (2008)).

The Court finds the Ninth Circuit's decision in *Winterrowd*, the Tenth Circuit's decision in *Dietrich*, and the Fourth Circuit's decision in *Priestley* to be persuasive. Here, Baek, Lee, and Corzano all properly entered their notices of appearances in this case as attorneys licensed to practice in the Northern District of Indiana. Pascale worked under their supervision during the pendency of this case. The Court therefore finds that fees for Pascale's work are recoverable.

**B.      Reasonableness of the Hours Expended**

Having determined the appropriate hourly rates for Plaintiff's attorneys, the Court must then assess the attorneys' time entries to exclude any hours deemed "'excessive, redundant or otherwise unnecessary.'" *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If the prevailing party fails to exercise the proper billing judgment, a court should exclude from the fee calculation "hours

that were not 'reasonably expended.'" *Id.* The Defendant challenges the Plaintiff's assertion that K&M exercised appropriate billing judgment in this case, arguing that the instant action is a "low stakes case consisting of one count claiming an FDCPA violation for one phone call that went no further than the parties filing their pleadings." (Def.'s Resp. 6.)

1.      Excessive Time

a.      *Drafting of the Complaint*

First, the Defendant challenges the K&M's billing of 1.5 hours for the drafting of the Complaint in this case. (*Id.*) According to the Defendant, the Complaint "consisting of a total of seventeen paragraphs, most of which were only one sentence and are not unique to this lawsuit." (*Id.*) The Defendant emphasizes that K&M focuses on FDCPA lawsuits and has sued the Defendant before; therefore, the Defendant concludes that "K&M surely used a template and previously drafted allegations for at least a portion of this Complaint." (*Id.*) The Plaintiff does not offer anything more than a general denial of this allegation in her Reply.

The Court finds that the Defendant's argument is unsupported by the evidence in the record. K&M's Statement of Services indicates that Baek billed 1.5 hours for drafting the Complaint on September 28, 2011. (Statement of Services 4.) In support of her Motion for Attorneys' Fees, the Plaintiff submitted the personal affidavit of Baek, in which Baek attests that "the time entries bearing my name represent the actual attorney hours I spent working on Plaintiff's case" and "that each of these time entries truly and accurately reflect the services I performed representing Plaintiff in this case." (Baek Declaration.) Although the Defendant maintains that Baek "surely" must have used a template in drafting the Complaint, the Defendant

offers no evidence to support this conclusion. Consequently, the Court finds that the 1.5 hours billed by Baek was reasonable.

b.      *May 22, 2012, Motion to Substitute*

On May 22, 2012, Corzano prepared a joint motion and proposed order to substitute counsel and billed .4 hours for his work on the matter. (Statement of Services 3.) Citing *Spegon*, *Schlacher*, and *Schommer*, the Defendant contends that it should not be billed for this work because "this is not something for which a client would expect to be billed." (Def.'s Resp. 7.) The Plaintiff notes that "it is not clear" how the cases cited by the Defendant support its position. (Pl.'s Reply 6.) In reply to the Defendant's contention that a client would not expect to be billed for drafting a motion to substitute, the Plaintiff argues that a client would expect to a law firm to inform courts of any change in lead attorney, ensuring that a client is effectively represented by licensed attorneys. (*Id.*) The Court agrees with the Plaintiff that the cases cited by the Defendant do not support the conclusion that the drafting of a motion to substitute counsel is not something for which a client would expect to be billed. *Spegon*, *Schlacher*, and *Schommer* all stand for the general proposition that an attorney should exercise billing judgment and should not bill clients for work normally not billed to a paying client. These cases do not specifically address the situation at hand and the Defendant has offered nothing more to support its conclusory assertion that a client should not be billed for a motion to substitute counsel. Therefore, the Court finds that Corzano's time billed for the motion to substitute is reasonable.

c.      *Jessica Pascale and the Rule 26(f) Report and Rule 26(a) Disclosures*

On June 15, 2012, Pascale spent an hour drafting a Rule 26(f) report. (Statement of Services 2.) On June 21, 2012, Pascale spent an hour drafting Rule 26(a) disclosures. (*Id.*) The Defendant argues that the time billed by Pascale for these activities is excessive given the simplicity of this case. According to the Defendant, the Rule 26(f) report was only a "three page pre-formatted form that required only dates and names to be filled in." (Def.'s Resp. 7.) Further, with respect to the Rule 26(a) disclosures, the Defendant maintains that Pascale "did nothing more than name the plaintiff and defendant as potential witnesses and list the cease and desist letter and account notes as exhibits, along with the usual broad scope list of general FDCPA related documents that K&M includes in all of their Rule 26(a) disclosures." (*Id.*)

In support of its Motion for Attorneys' Fees, the Plaintiff submitted the personal affidavit of Pascale, in which Pascale attests that "the time entries bearing my name represent the actual attorney hours I spent working on Plaintiff's case" and "[t]hat each of these time entries truly and accurately reflect the services I performed representing Plaintiff in this case." (Pascale Declaration.) As to the Rule 26(f) report, contrary to the Defendant's assertion, the Court observes that Pascale's work was not limited to the completion of a three-page, pre-formatted documents that required only dates and names to be filled in. Pascale recorded that she "reviewed the Judge's standing Order and the local rules; reviewed Plaintiff's Complaint and Defendant's Answer; prepared FRCP 26(f) Scheduling Report and e-mailed to defense counsel for approval before filing." (Statements of Services 2.) The Court finds that a total of one hour for these activities is not unreasonable. Similarly, Pascale's work on the Rule 26(a) disclosures included reviewing the Plaintiff's Complaint, case summary, and file to prepare to draft the disclosures; preparing witness disclosures; preparing document disclosures; and revising and

finalizing the disclosures. (*Id.*). The Court finds that an hour for this work is not unreasonable.

2.      Administrative Tasks

Generally, attorney or paralegal time should not be charged for administrative tasks. *Spegon*, 175 F.3d at 553. In determining whether a task is administrative in nature, the relevant inquiry is "whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder." *Id.* Courts in the Seventh Circuit have identified a variety of tasks as being administrative in nature, including organizing file folders, document preparation, copying or faxing documents, scheduling matters, and mailing letters. *See, e.g., id.* (approving of district court's denial of time for time spent updating an attorney's "case list" and calendar, holding conferences with a paralegal, and approving of district court's decision to reduce paralegal's fees by half for time spent organizing file folders, document preparation, and copying documents); *Pace v. Pottwattomie Country Club Inc.*, 3:07–CV–347 RM, 2009 WL 4843403, at *13 (N.D. Ind. Dec. 11, 2009) ("The court agrees, however, that certain tasks performed were of a clerical nature, such as: sending pleadings to client; review of appearances, summons, waiver of service and other similar documents; payment to EEOC; drafting cover sheets; and filing documents with the court. Although some of these tasks were performed by a paralegal, they are clerical in nature and cannot be part of the fee award."); *Firestine v. Parkview Health Sys., Inc.*, 374 F. Supp. 2d 658, 667 (N.D. Ind. 2005) (reducing time billed by paralegal on similar activities found to be administrative in nature).

a.    *Moira Roth's April 5, 2012, Billing Entry*

The Defendant argues that Moira Roth's time entry for April 5, 2012, was excessive. (Def.'s Resp. 6.) On April 5, Roth, a paralegal, entered a billing entry for 1.1 hours after preparing the case for filing, including formatting the Complaint, researching the location of the Defendant, preparing the summons and civil cover sheet, and reviewing local and court rules for filing. (Statement of Services 4.) The Defendant contends that these tasks were "partly duplicative and partly administrative (such that a secretary could perform them without any legal expertise." (Def.'s Resp. 6.) Therefore, the Defendant argues that Roth's time should be reduced to .2 hours, a reasonable time to prepare the summons and civil cover sheet. (*Id.*) In its Reply, K&M maintains that Roth's work on April 5th in this case was not administrative in nature. (Pl.'s Reply 7.) K&M argues that "[t]he skill and complexity in preparing court documents requires legal knowledge and experience that a paralegal or legal assistant would have." (*Id.*) Further, K&M notes that knowledge of federal rules and local rules is not something that would be expected of a secretary. Neither party has identified case law relevant to a determination of whether the tasks performed by Roth were administrative in nature.

Here, the Court agrees in part with the Defendant. Roth billed for 1.1 hours of work, including researching the location of the Defendant. Researching the location of the Defendant does not require legal knowledge or skill and is therefore the type of task that courts have found to be administrative in nature. A simple internet search would likely have been sufficient to find the necessary information regarding the Defendant's location. The Court will therefore reduce Roth's 1.1 hours of work to .9 hours of work. The other tasks called into question by the Defendant are not, however, administrative in nature. Formatting the Complaint to comply with

federal and local rules and drafting the summons and civil cover sheet are activities requiring some degree of legal knowledge or skill. Consequently, the Court finds that they may be included in the Plaintiff's request for attorneys' fees.

b.      *List of "Administrative" Billing Entries*

The Defendant cites a laundry list of billing entries that it believes are administrative tasks for which attorneys' fees should not be awarded, including:

- Sept. 8, 2011, Mr. Arguss billed for opening a database file, setting up tracking files in Amicus;

- Sept. 28, 2011, Mr. Teamor billed for mailing the Complaint to Midland;

- April 2, 2012, Ms. Pascale billed for reviewing and saving a cease and desist to the file, finalizing the Complaint for review, requesting the cease and desist (presumably meaning that she contacted someone to obtain a copy of the cease and desist letter Plaintiff claims to have sent to Midland);

- April 5, 2012, Ms. Pascale billed for preparing filing checklist and sending it to attorneys for review;

- April 12, 2012, Mr. Baek billed for receiving and saving the filed Complaint;

- May 1, 2012, Mr. Corzano billed for receiving and saving an electronic copy of the proof of service to the file and calendaring the answer date;

- May 4, 2012, Mr. Baek also billed for receiving an electronic copy of the proof of service and sending it to Midland;

- May 11, 2012, Mr. Corazano billed for reviewing and saving the appearance of Midland's counsel;

- May 22, 2012, Mr. Corazano billed for filing a motion;

- June 15, 2012, Ms. Pascale billed for filing the parties' planning report;

- June 19, 2012, Mr. Lee billed for receiving the electronic notice that the Rule 26f report had been filed and billed for calendaring the dates;
- June 25, 2012, Mr. Lee billed for receiving another attorney appearance for Midland and updating Amicus

(Def.'s Resp. 8–9.) The Defendant notes that these entries total 3.6 hours and approximately $1,000 in attorneys' and paralegal's fees. (*Id.* 9.) Although it is difficult to determine the exact amount of fees requested for these tasks because of the Plaintiff's block billing, the Defendant argues "that in low-stakes cases such as these, the Court need not be precise or waste time calculating explicit rates and hours as long as the attorney's fee awar[d] is fair." (*Id.* (citing *Schlacher*, 574 F.3d at 858–59).) In her reply, the Plaintiff asserts that the Defendant's argument is "conclusory, unsupported, and inaccurate." (Pl.'s Reply 8.)

Neither party has provided accurate representations of the billing records in question. The Defendant omits significant portions of the billing records from its brief, implicitly asserting that the challenged billing records include purely administrative tasks. The Plaintiff seemingly ignores the records highlighted by the Defendant and focuses on the portions of the challenged records that involve substantive legal work. A review of the billing record from the Statement of Services shows that the challenged billing records, for the most part, involve substantive legal work, but also contain some instances of administrative work. The Court's task in determining what portion of the challenged billing records are administrative in nature is complicated by the Plaintiff's method of block billing. While block billing "does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank and Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006). However, where block billing and vague

descriptions have left this Court unable to discern whether the amount of time spent on each individual task was reasonable, this Court has reduced or denied attorneys' fees. *See Cooper v. Verifications, Inc.*, No. 1:04–CV–385–TS, 2008 WL 5332190, at *12 (N.D. Ind. Dec.18, 2008) ("Where a court finds hours to be insufficiently documented, it may disallow those hours or reduce the entire fee award by a proportionate amount.") (internal quotation marks and citation omitted).

Here, the Defendant has challenged twelve of the Plaintiff's billing entries on the grounds that they include attorneys billing for performing administrative tasks. The Court finds that ten of the twelve entries challenged by the Defendant do, in fact, contain billing entries for administrative task performed by attorneys; Pascale will be credited in full for her billing entries of April 2, 2012 and April 5, 2012. The ten entries involve tasks that courts in the Seventh Circuit have found to be administrative in nature, including opening and organizing case files, mailing documents, receiving documents, saving documents, filing motions, and calendaring hearing dates. *See Spegon*, 175 F.3d at 553; *Pace*, 2009 WL 4843403, at *13; *Firestine*, 374 F. Supp. 2d at 667. Because several of the billing entries containing attorney work for administrative tasks are part of the Plaintiff's block billing system and the Court is unable to determine the precise amount of time expended on administrative tasks, the Court finds that a ten percent reduction in fees is appropriate for the following entries and adjusts the Plaintiff's fee award accordingly:

- September 8, 2011: Mike Agruss opened file in database; discussed with associate and created factual summary; prepared outline of linked events; and prepared Amicus Precedent to track case;

- May 4, 2012: Douglas Baek received ECF notice of filed POS; forwarded same to Defendant's in house counsel with demand to

settle;

- May 22, 2012: Mahadhi Corzano prepared joint motion for substitution of counsel; prepared proposed order regarding same; filed and e-mailed documents to the Court.

For individual entries of purely administrative work performed by attorneys, the Court will not award attorneys' fees to the Plaintiff. These include:

- September 28, 2011: Ricardo Teamor mailed Complaint to client with self-addressed envelope;

- April 12, 2012: Douglas Baek received ECF notice of filed Complaint with exhibit and civil cover sheet; saved;

- May 1, 2012: Mahadhi Corzano reviewed ECF with filed executed proof of service; memo to file with Defendant's Answer deadline;

- May 11, 2012: Mahadhi Corzano received notice of appearance of defense counsel; saved;

- June 15, 2012: Jessica Pascale filed Report of the parties planning meeting;

- June 19, 2012: Ryan Lee received ECF notice of Scheduling Order entering due dates for case; diaried same in Amicus;

- June 25, 2012: Ryan Lee received ECF notice of appearance for opposing counsel; updated Amicus.

As set forth in the Statement of Services, the Plaintiff's attorneys billed for a total of 18.2 hours with an additional 2.2 hours of work performed by paralegals. (Statement of Services 1.) Based on the above analysis, the Court will reduce the billable time as follows. Agruss billed for 3.8 hours of work, which will be reduced to 3.72 hours of work based on a ten percent reduction of time for his September 8, 2011, billing entry in which he billed for performing administrative tasks. Lee billed for 1.5 hours of work, which will be reduced to 1.1 hours of work based on his inclusion of billing entries from June 19 and June 25, 2012, that involved purely administrative

tasks. Corzano billed for 2.8 hours of work, which will be reduced to 2.3 hours of work based on his inclusion of billing entries from May 1 and May 11, 2012, that involved purely administrative tasks. Corzano's billable hours will be reduced further to 2.26 hours based on a ten percent reduction of time for his May 22, 2012, billing entry in which he billed for performing administrative tasks. Baek billed for 4.7 hours of work, which will be reduced to 4.5 hours based on his inclusion of a billing entry from April 12, 2012, that involved purely administrative tasks. Baek's billable hours will be reduced further to 4.47 hours based on a ten percent reduction of time for his May 4, 2012, billing entry in which he billed for performing administrative tasks. Pascale billed for 5.4 hours of work, which will be reduced to 4.9 hours based on her inclusion of a billing entry from June 15, 2012, that involved purely administrative work. Finally, the Plaintiff billed for 2.2 hours of paralegal work, which will be reduced to 2 hours based on Ricardo Teamor's billing entry for September 28, 2011, that involved purely administrative work. The billable paralegal time will further be reduced to 1.8 hours based on Moira Roth's April 5, 2012, billing entry, which included purely administrative work.

3.      Duplicative Work

        Finally, the Defendant challenges multiple instances of what it considers to be duplicative work and seeks a reduction in the Plaintiff's requested fee award.

a.      *Multiple Interviews of the Plaintiff*

        First, the Defendant challenges four of the Plaintiff's billing entries between September 7, 2011, and September 12, 2011. (Def.'s Resp. 9–10.) The Defendant maintains that these

entries show that the Plaintiff was interviewed on three separate occasions and that the Plaintiff's attorneys drafted four duplicative memos or summaries. (Def.'s Resp. 9.) The Plaintiff emphasizes that the Defendant has mischaracterized the substance of Agruss' and Baek's billing entries (Pl.'s Reply 8–9), and the Court agrees.

On September 7, 2011, Agruss received an inquiry from the Plaintiff, arranged a consultation with the Plaintiff, researched the viability of a claim against the Defendant, and prepared a memo for the case file. (Statement of Services 4.) On September 8, 2011, Agruss opened a file in the database, discussed the case with associates, create a factual summary, prepared an outline "of linked events", and prepared an Amicus Precedent to track the case. (*Id.*) The next day, on September 9, 2011, Agruss interviewed the Plaintiff, prepared a form interview, prepared a memo on possible counts to file, and researched applicable state and federal statutes to determine the venue and possible state and federal counts. (*Id.*) Several days later, on September 12, 2011, Baek spoke with the client to discuss case facts in preparation for drafting the complaint and prepared a memo outlining the FDCPA violations for the client's Complaint. (*Id.*)

Here, the Statement of Services indicates that there was one formal interview of the Plaintiff conducted by Agruss on September 9, 2011. The only other entry that could conceivably overlap with Agruss' September 9 billing entry is that of Baek's on September 12, but, to the Court, that record appears to indicate that Baek sought additional clarification of the facts from the Plaintiff. The Court is mindful of the *Schlacher* Court's statement that "though efficiency can sometimes be increased through collaboration, overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative

billing when multiple lawyers seek fees." 574 F.3d at 858 (internal citations omitted). But in the instant case, the Court finds that Baek and Agruss worked in a mutually supportive fashion to develop the Plaintiff's Complaint for filing. Therefore, the Court does not find a reduction is appropriate for the four entries challenged by the Defendant.

b.       *The Defendant's Miscellaneous Challenges*

In its Response, the Defendant challenges multiple instances of alleged duplication on the part of the Plaintiff's attorneys. (Def.'s Resp. 10.) Specifically, the Defendant challenges Pascale's review of the Complaint on three separate occasions; Pascale's and Roth's reviewing the same local rules on separate occasions; and Corzano's reviewing the Complaint drafted by Baek. (*Id.*). The Court finds the Defendant's challenges without merits. A brief review of a complaint, regardless of a complaint's length, is a common action in litigation. Similarly, the fact that a paralegal and an attorney reviewed the same set of local rules can hardly be considered noteworthy. Finally, junior associates such as Corzano often review drafts of more senior attorneys like Baek. The Court finds that these acts do not warrant a rate reduction.

**CONCLUSION**

For the reasons stated above, the Court GRANTS in part and DENIES in part the Plaintiff's Motion [ECF No. 21]. The Court finds that $285 per hour was a reasonable billing rate for the Plaintiff's attorneys. Further, the Court finds that the time billed by the Plaintiff's attorneys was reasonable subject to a reduction in time for the billing entries containing administrative tasks performed by attorneys and paralegals. In total, the Plaintiff's attorneys may

bill for 16.45 hours[9] of attorney work and 1.8 hours of paralegal work. Therefore, the Court, in its discretion, awards the Plaintiff's attorneys $4,940.25[10] in attorneys' fees.

SO ORDERED on December 12, 2012.

s/Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION

---

[9] 3.75 hours (Agruss) + 1.1 hours (Lee) + 2.26 hours (Corzano) + 4.47 hours (Baek) + 4.9 hours (Pascale) = 16.45 hours

[10] 16.45 hours x $285/hour = $4,688.25 (Attorney Work). 1.8 hours x $140/hour = $252.00 (Paralegal work). $4,688.25 (Attorney work) + $252.00 (Paralegal work) = $4,940.25 (Total).